times. Being satisfied to remain in and upon the premises and use them for so many years in the condition in which they were, it may well be assumed that he was willing to take the risk of that condition. But with respect to the absence of a light at the time the accident occurred, and the negligence of the defendant or his servant in charge of the house in failing to have the light burning on that occasion, an entirely different question arises. There was a violation of the statute proven. The defendant's janitress testifies that the light in the hallway near this staircase was not burning at the time of the accident, but that she was then on her way to light it. The evidence of the plaintiff and of another witness is that it was very dark on the stairway. There was neglect to comply with the statute. The gas was not burning during all the time required by that statute, and, if the injury happened to the plaintiff in consequence of the want of that light, the violation of the statutory duty gave the right of action to the injured party. Pauley v. Lantern Co., 131 N. Y. 90, 29 N. E. 999; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986; Pitcher v. Lennon, 12 App. Div. 356, 42 N. Y. Supp. 156; Hanrahan v. Cochran, 12 App. Div. 91, 42 N. Y. Supp. 1031. There was evidence from which the jury could have inferred that the violation of the statute in the neglect to furnish light was the cause of the accident. The plaintiff's statement is that as he was descending the stairs with small fish kettles in one hand, supporting himself by the other hand against one of the walls of the stairway, he missed his footing, slipped, and fell. The whole tenor of the evidence is that in consequence of the darkness the plaintiff made the misstep, and we must take the inference most favorable to the plaintiff that can legitimately be drawn from the testimony. There was enough, therefore, to go to the jury on the question of the defendant's negligence. It could not be adjudged, as matter of law, that the plaintiff was guilty of contributory negligence. That the plaintiff used the stairway in darkness does not, in and of itself, convict him of contributory negligence. Kenney v. Rhinelander, 28 App. Div. 246, 50 N. Y. Supp. 1088; Totten v. Phipps, 52 N. Y. 354. He lived upon one of the upper floors. This stairway led from the ground floor to the second floor, and he was on his way to the street. Whether he was guilty of contributory negligence was a matter for the jury to determine, upon all the facts and circumstances of the case.

A cause of action was proven, and the judgment appealed from should be reversed, with costs to abide the event. All concur.

---

(43 App. Div. 104.)

### GRAY v. NEW YORK EL. R. CO. et al.

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

EMINENT DOMAIN—DAMAGES—INJURIES TO FEE AND RENTAL VALUES.

    In an action for the diminution in value of a building, caused by the proximity of a railroad, an award of $275 per year rental damages and $3,000 fee damages is excessive when the evidence shows a steady increase in values and rents since the road was built, and no reliable evidence is introduced as to the values before.

Appeal from special term, New York county.

Action by Emeline M. Gray against the New York Elevated Railroad Company and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

J. Osgood Nichols, for appellants.

Charles H. Strong, for respondent.

BARRETT, J. This is the usual action for an injunction and damages, and practically the only question raised is whether the awards are sufficiently supported by the evidence. The property affected is No. 663 Ninth avenue, on the southwest corner of Ninth avenue and Forty-Sixth street, having a frontage of 21 feet 6 inches on the avenue and 75 feet on the street. There is a four-story building on the land, containing two stores on the ground floor,—one fronting on the avenue, and 50 feet deep; the other fronting 18 feet on Forty-Sixth street, and 21 feet deep. The award for rental damage is $2,890. It covers the period from December 1, 1887, to May 12, 1898, and is at the rate of about $275 a year. Prior to 1881 the premises were occupied by the plaintiff, but the rents received from this year to the present are in evidence. In 1881 the total rent was about $2,680 a year, and it has increased annually about $300. This is largely due to a steady increase in the rent of the Ninth avenue store, which brought but $83.33 a month in 1881, but has rented for $112.50 a month since 1893. The rent of the Forty-Sixth street store has increased somewhat (though to nothing like the extent of the other), but the rent of the flats has decreased. The basement fronting on Ninth avenue was rented in 1896, and the total rent for both store and basement was $125. Thus we start with the fact that the rent of that portion of the premises directly abutting on Ninth avenue, and which, it might be inferred, would be most severely affected, has increased 50 per cent., while the rent of that part furthest removed has barely held its own, or has actually declined. The apartments are, doubtless, to some extent affected, for they have windows opening on the avenue. It appears, however, that the entrance is upon Forty-Sixth street, and that nearly one-quarter of the frontage is upon that street. But this is not true of the Forty-Sixth street store, which does not abut at all upon the avenue. Certainly, the most that can fairly be claimed is that the property should be taken as a whole, and, as thus taken, it shows, for the most part, a steady increase. To offset this fact, there is no evidence that the rent actually declined after the building of the road, for no pre-road rentals are in evidence, and we are forced to rely, for a standard of comparison, upon some estimates of the plaintiff's expert, Auld. He states that rental values on Ninth avenue have decreased about 25 per cent. since 1873, and the plaintiff's case depends largely upon the accuracy of this statement. The statement is not made specifically with reference to the premises in suit, though said to apply to "property of this character."

Later he stated that the rental value of buildings as a whole on Ninth avenue decreased 20 to 25 per cent. since 1881. This clearly indicates the unreliability of his estimates as applied to this particular property, which in fact increased about 12 per cent. during this period. There are numerous other inconsistencies and inaccuracies in his testimony. He stated that improved property on Ninth avenue has decreased at least 10 per cent. since 1881; but he says that the premises in suit were worth $32,000 to $32,500 in 1881, and $35,000 at the time of trial,—that is, that they had increased nearly 10 per cent. in value, instead of decreasing to that extent. Again, he says that the value of such property as this decreased 20 per cent. since 1873; but that the premises in suit were worth $29,000 in 1873, and $35,000 at the time of trial. Some repairs, costing $9,-000, were made in 1880; but, deducting this sum from $35,000, we still have a decrease of but 10 per cent., instead of 20; and when we consider that in 1898 the new building had been in use 18 years it is evident that even Auld's estimate makes the value of the property at least as great as in 1873. The accuracy of the witness' mental calculations is well indicated by his statement: "That store has increased from $80 to $112. That is about 20 per cent." His figures, it will be perceived, just double his estimated percentage. A still greater discrepancy between his figures and his estimates of percentages occurs with reference to property on Ninth avenue north of Sixty-Fifth street, which he says has increased 60 to 75 per cent. since 1873. He gives the figures,—namely, $7,000 for a lot in 1873, and $18,000 to $20,000 now, or an increase of 150 to 180 per cent., and over. Of what value is the statement of such a witness that rental values have decreased 25 per cent. since 1873? It would serve no useful purpose to pursue the subject further. It is impossible to obtain any definite or reliable results from the testimony of this witness. It is not too much to say that his testimony is a bundle of inconsistencies and contradictions; and it comes directly in conflict with the few tangible facts of the case. In such cases courts have always shown great reluctance in allowing an award to stand. When we consider that the actual rents of the property have increased; that the part in closest contact with the road has increased by far the most; that it does not appear what the property actually brought before the road; and that the estimates as to pre-road rental values (upon which the defendants are forced to rely) are of the most unsubstantial and unreliable character,—it cannot well be said that the plaintiff made out a cause of action by a fair preponderance of evidence. This failure to establish satisfactorily, either by tangible facts or opinion evidence, a standard with which to compare the present rents of the property, undermines the basis of the award. When we cannot ascertain how much the property in suit has lost or gained, the fate of neighboring property seems immaterial. The award for fee damage was $2,000. Here, again, the plaintiff's case depends upon the accuracy of Auld's estimates, and it is not necessary to refer further to the hopeless confusion in his estimates of fee values. In fact, some of his clearest utterances make strongly in favor of the

defendants. He testifies that the value of a corner lot on Ninth avenue was $15,000 in 1877 and 1878, $12,500 in 1881, and $24,000 now. This is an increase of 60 per cent. since 1877, and nearly 100 per cent. since 1881. Such a marked increase is destructive of the plaintiff's case. It is contended that the defendants' expert admitted a decrease in Ninth avenue values of 12½ per cent. since 1873, but an examination of his testimony makes it plain that he was referring merely to the decline in and subsequent to 1873, due to the panic. He testifies explicitly that Ninth avenue property increased in value subsequent to 1880, the increase being practically the same as on Eighth and Tenth avenues. Each case of this sort must depend largely upon its own particular facts. Without considering at greater length a case in which no general rule of law is involved, our conclusion is that justice requires a new trial of the issues. The judgment should consequently be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.